510 So.2d 55 (1987)
STATE of Louisiana
v.
Steven MOTEN.
Nos. KA 86 1444, KA 86 1445.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
*57 Keith M. Whipple, Asst. Dist. Atty., Houma, for State of La.
Paul E. Brown, Chief Counsel, Office of the Indigent Defenders, Houma, for Steven Moten.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
Steven Moten was charged by grand jury indictment with the second degree murder of Leola Welch. Following a trial by jury, defendant was convicted of the responsive offense of manslaughter, a violation of La. R.S. 14:31. Defendant was subsequently charged and adjudicated a second felony habitual offender. The trial court sentenced defendant to a forty-two year term of imprisonment at hard labor. Defendant brings this appeal, urging fourteen assignments of error. Assignment of error number one is not briefed and, therefore, is considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS
On February 26, 1986, defendant reported a shooting incident to the Terrebonne Parish Sheriff's Office. When officers arrived at the Gray, Louisiana, home of Leola Welch, they found defendant and an elderly blind man seated in a back room. Defendant had a bullet wound in his forearm. Ms. Welch's body lay immediately outside the rear entrance to her home. An autopsy later conducted revealed that Ms. Welch died of massive bleeding occasioned by two gunshot wounds. One bullet entered through the level of her lower scapula and the other through the back of her arm. Mr. Rose, the elderly blind man, was senile. Therefore, Mr. Rose was unable to provide any information about the incident. Defendant lived next door to the victim.
The officers suspected that defendant shot Ms. Welch and then attempted to redirect suspicion by self-inflicting a wound. On three separate occasions, Ms. Welch had sought police assistance in controlling a disturbance initiated by defendant. *58 Shortly after the victim's death, officers searched defendant's house pursuant to a consent to search. Although no firearms were found, the officers did recover live ammunition from various locations inside defendant's house and observed blood stains on his doorway and telephone receiver.
The state called the defendant's son, Gabriel D. Moten, as a rebuttal witness. On direct examination, Gabriel Moten testified he was 32 years old, he maintained a relationship with his father, Steven Moten, ever since birth and that from 1972 to 1982 Steven Moten was in the state penitentiary in Huntsville for murder. On cross-examination, Gabriel Moten was allowed to testify, over objection by the state, that he talked to Steven Moten about what happened and was told that Steven Moten heard a scream and went to Leola Welch's (Aunt Aggie's) house. When Steven Moten entered the house, he was confronted by a masked gunman who pulled a gun and shot at him. Steven Moten tried to duck and fell to the floor. Leola Welch ran past Steven Moten out of the house, and the gunman followed her and shot at her. Steven Moten laid on the floor and pretended he was dead. On redirect examination by the state, Gabriel Moten stated Steven Moten told him this story in jail, two days after the shooting.

GRANTING OF MISTRIAL AND RETRIAL OF DEFENDANT

(Assignments of Error Numbers 2 and 3)
Defendant contends that the trial court erred by granting a mistrial and by allowing defendant to be retried.
The minutes reveal that selection of the jury began on October 22, 1985. At the close of that day, eight of the twelve necessary jurors had been selected. However, the next day the prosecuting assistant district attorney was ill and unable to attend the trial. A substitute assistant district attorney informed the court that no other assistant district attorney was prepared to try this case. Therefore, he moved for a mistrial on the ground that it was physically impossible to proceed with the trial. See La.C.Cr.P. art. 775(5). Following argument, the trial court granted the state's motion over defendant's objection. Several months later, defendant was tried and convicted in the instant proceeding.
After granting of the mistrial, defendant filed a writ application with this court. That application and a subsequent application to the Louisiana Supreme Court were denied. On appeal, defendant reurges the same arguments previously raised.
A mistrial may be granted under La.C. Cr.P. art. 775 when it is physically impossible to proceed with a trial. Article 775 lists categories supporting the granting of a mistrial, rather than leaving the decision to the unfettered discretion of the trial court. The article is based in part on the A.L.I. Model Penal Code, which lists the illness of an attorney as an example of a legitimate reason to declare a mistrial. See Comment (c)(1) of La.C.Cr.P. art. 775.
Defendant does not contest the genuineness of the prosecuting attorney's illness. The mistrial granted in this case was both reasonable and necessary. Thus, we find no abuse of discretion. Moreover, jeopardy had not attached, barring retrial, because the jury was not impaneled and sworn. State v. Bodley, 394 So.2d 584 (La.1981).
For the foregoing reasons, these assignments of error are without merit.

ADMISSIBILITY OF PHOTOGRAPHS OF CRIME SCENE

(Assignment of Error Number 4)
Defendant contends that the trial court erred by allowing the introduction into evidence of photographs depicting the crime scene over his objection. Defendant complains because the photographs were not taken on the night of the incident; and Jody Robichaux, the testifying witness, was not the photographer.
Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy *59 and when they shed light upon the matter before the court. State v. Robertson, 454 So.2d 205 (La.App. 1st Cir.1984), writ denied, 458 So.2d 487 (La.1984). A proper foundation for admission in evidence of photographs is laid when a witness having personal knowledge of the subject depicted by the photographs identifies it. It is well settled that photographs need not be identified by the person who took them to be admissible in evidence. State v. Leggett, 363 So.2d 434 (La.1978); State v. Robertson, 454 So.2d at 210.
In this case, the foundation was provided by the testimony of Jody Robichaux, one of the investigating officers. Officer Robichaux testified that the photographs were accurately taken and fairly represented the subject. Thus, the trial court did not abuse its discretion in admitting the photographs in evidence.
This assignment of error is without merit.

OPINION TESTIMONY OF LAY WITNESS

(Assignment of Error Number 5)
Defendant contends that the trial court erred when it allowed Donald Adams to testify about matters beyond his expertise and competency without being qualified as an expert.
Donald Adams is a detective for the Terrebonne Parish Sheriff's Office whose duties focused on crime scene investigation. When Detective Adams arrived at the Welch house, other officers were already present. Detective Adams testified that he overheard these officers attempting to converse with Mr. Rose, the elderly blind man. However, Mr. Rose responded by making an unintelligible singing or chanting sound. The only utterance from Mr. Rose that Detective Adams understood was Mr. Rose's announcement that he was hungry. After receiving testimony about Detective Adams' observations, the prosecutor asked him if Mr. Rose appeared to know what was going on. Detective Adams responded negatively, and defendant objected, grounded on Adams' lack of expertise.
We find no error in the trial court's allowing the question and answer. La.R.S. 15:463 provides the general rule that a witness can testify only as to facts within his knowledge and may not testify as to any impression or opinion that he may have. However, it has been determined that, where the subject of the testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inferences provided he also states the observed facts. State v. Adams, 394 So.2d 1204 (La.1981).
In the instant case, Detective Adams' observations provided an adequate factual basis for his inference that Mr. Rose was unaware of the events surrounding the investigation.
Accordingly, this assignment of error is without merit.

ADMISSIBILITY OF PHOTOGRAPHS OF VICTIM

(Assignment of Error Number 6)
Defendant contends that the trial court erred when it overruled his objections to ten photographs depicting the crime scene and Ms. Welch as she was found dead at the scene. Defendant argues that the photographs are unduly gruesome.
The admission of allegedly gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983). Post-mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir.1984), writ denied, 460 So.2d 604 (La.1984).
*60 After examining the contested photographs, we find that their probative value clearly outweighs any prejudicial effect. Thus, these photographs were admissible.
This assignment of error is without merit.

ADMISSIBILITY OF PHYSICAL EVIDENCE

(Assignments of Error Numbers 7, 8 and 9)
Defendant contends that the trial court erred by admitting certain items into evidence which were not relevant to the instant prosecution. The disputed items were photographs of an ashtray containing bullets found in defendant's home, the actual bullets seized from defendant's home, and photographs of and testimony about a shotgun found in defendant's home and a .22 caliber pistol found in the victim's home.
La.R.S. 15:435 provides evidence must be relevant to a material issue at trial before it is to be introduced. Much discretion is vested in the trial judge in questions of relevancy. State v. Andrews, 451 So.2d 175 (La.App. 1st Cir.1984), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1347 (La.1984). We find no manifest abuse of discretion herein.
In the present case, the police did not recover any fragments or casings from the two bullets which passed through Ms. Welch's body. In addition, they were unable to retrieve any fragments of the bullet lodged in defendant's forearm. Thus, the ballistic experts who testified could not determine even the caliber of the weapon(s) utilized. Under these circumstances, the ammunition found in defendant's home was not as probative as it might have been if more precise information were available about the murder weapon. However, the conspicuous absence of firearms, in the presence of various types of live ammunition, did tend to support the prosecution's theory that defendant disposed of the murder weapon prior to summoning the police.
These assignments of error are without merit.

CROSS-EXAMINATION OF CHARACTER WITNESSES

(Assignments of Error Numbers 10 and 11)
Defendant argues that it was error to permit the state to question defense character witness, Eunice Andrews, about defendant's prior murder conviction.
During direct examination, defense counsel asked Ms. Andrews, defendant's common-law sister-in-law, about defendant's reputation in the community. Ms. Andrews responded that defendant had a reputation of being a good and fine man. After a hearing held in chambers, the state cross-examined Ms. Andrews about her awareness of defendant's 1972 conviction of murder with malice aforethought in Texas. Ms. Andrews admitted that she had heard of the conviction. However, since she had not personally witnessed the event, it did not influence her opinion of defendant.
If a defendant places his character at issue, the state is permitted to introduce testimony of his bad character to rebut the evidence introduced by him to show good character. La.R.S. 15:481. Cross-examination of a character witness may extend to his knowledge of particular misconduct, prior arrests, or other acts relevant to the moral qualities pertinent to defendant's crime. State v. Rault, 445 So.2d 1203 (La. 1984).
Defendant called Ms. Andrews to show that the crime charged was inconsistent with his character, thus putting his character at issue. Since defendant opened the door in this manner, the state could question Ms. Andrews about her knowledge of defendant's prior conviction. The question about the murder conviction focused directly upon the character traits the witness ascribed to defendantthat he was a good and fine man.
*61 In State v. Johnson, 389 So.2d 372 (La. 1980), the Louisiana Supreme Court delineated certain safeguards regulating prosecutor character witness examination. Johnson requires that a trial court ascertain, out of the presence of the jury, if the prosecutor has reasonable grounds for cross-examining the character witness about convictions, arrests, or other misconduct of the accused. Johnson further requires that "the witness should not be asked `if he knows' that the accused has committed such other crimes, but only whether he `has heard' that defendant has committed particular acts inconsistent with the reputation vouched for on direct." Johnson, 389 So.2d at 376.
These standards were adopted to eliminate undue jury prejudice from improper cross-examination of character witnesses. In this case, the prosecution question was phrased in the "if you know", not "have you heard" form. In addition, the scope of the preliminary inquiry held in chambers is not of record.
Despite these deficiencies, it does not appear that there was undue prejudice. The "have you heard" as opposed to "do you know" form of questioning is of only slight significance. It has been eliminated as a factor in formulating questions under the federal rules of evidence. E. Cleary, McCormick's Handbook on Evidence, § 191, p. 569 (Cleary Ed. 1984). In addition, it is clear that Ms. Andrews was aware of defendant's prior conviction, the validity of which is not disputed. Moreover, as in the Johnson case itself, a defendant cannot avail himself of the Johnson safeguards if he fails to make a contemporaneous objection. La.C.Cr.P. art 841; Johnson, 389 So.2d at 377; State v. Singletary, 461 So.2d 481 (La.App. 3rd Cir. 1984). The record does not reveal any defense objections to this form of questioning.
For the foregoing reasons, these assignments of error are without merit.

SUFFICIENCY OF THE EVIDENCE

(Assignment of Error Number 12)
Defendant contends that the verdict was contrary to the law and the evidence.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
In this case, the jury was presented with two theories of the homicide: the state's theory that defendant intentionally shot the victim and defendant's theory that an unidentified assailant inflicted the fatal wound. The jury's verdict of guilty of manslaughter obviously reflects a compromise between a verdict of guilty as charged (of an intentional and unprovoked killing) and a verdict of not guilty, which the jurors would have been required to return if they had believed defendant's totally exculpatory version.
The jurors obviously concluded that defendant's version of the events immediately preceding the fatal shots was a fabrication designed to deflect blame from himself. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. Captville, 448 So.2d at 680.
The jury's verdict reflected a reasonable construction of the events of the evening based upon the evidence viewed in the light most favorable to the prosecution. The state presented a documented history of discord between defendant and the victim. Fresh bloodstains found in defendant's neighboring home indicated that he *62 had traveled to his house to telephone the police. This trip afforded defendant an opportunity to dispose of any firearm. In addition, the police found live ammunition by the side of defendant's bed, but no firearm to utilize it. There does not appear to be any other hypothesis which raises a reasonable doubt as to defendant's guilt. Thus, we cannot say that a rational juror could not have voted to convict.
Accordingly, this assignment of error lacks merit.

DENIAL OF MOTION FOR NEW TRIAL

(Assignment of Error Number 13)
By means of this assignment of error, defendant urges that the trial court erred by failing to grant his motion for a new trial.
The grounds argued in the overruled motion formed the basis for assignments of error numbers seven, eight, nine, ten, eleven and twelve. Accordingly, a new trial is not justified for reasons fully set forth in our discussion of each of those assignments of error.
This assignment of error lacks merit.

ENHANCEMENT OF SENTENCE AS HABITUAL OFFENDER

(Assignment of Error Number 14)
In this assignment of error, Moten contends the "multiple billing process was improper and violated the defendant's constitutional rights." In briefing this assignment of error, Moten argues as follows:
It is clear that the fingerprints which were taken in 1950 and sent from the Texas Department of Corrections did not comply with the provisions of Revised Statute 15:529.1,F. Therefore, they should not have been admitted into evidence at the hearing. The other evidence admitted at the hearing by the prosecutor would not be sufficient to prove that Mr. Steven Moten had a previous felony on his record.... That evidence was merely hearsay and it was not specific enough to show that Mr. Moten was the same person who was convicted of murder in 1950. Therefore, we submit that the multiple billing process was improper and illegal and that it violated the defendant's constitutional rights to due process.
In response to these claims, the state argues as follows:
The State contends that the documentation from Texas was property [sic] certified and introduced in accordance with law. The expertise of the fingerprint expert called by the State, Danny Deroche [sic], was never at issue. All procedures and guidelines were properly followed. Accordingly, the Assignment of Error is without merit.
The habitual offender bill charges that "Steven Moten was duly charged in case number 175992 of the State District Court for the County of Walker, Texas, with the crime of Murder; that on the 31st day of May, 1972, said accused was convicted of murder with malice aforethought, a felony under the laws of the State of Texas and likewise a felony under the laws of the State of Louisiana and was sentenced to life imprisonment at hard labor in the Texas State Penitentiary."
At the trial of the habitual offender charge, the State introduced into evidence "the pen-pack from the State of Texas, County of Walker, certified under the Acts of Congress, showing that Steven Moten on the 31st of May, 1972, was found guilty as charged of murder with malice aforethought, including his sentence which was for life, his picture, his fingerprints...." There was no contemporaneous objection to this offer.[1] The state also introduced into evidence the trial testimony given by Gabriel Moten. The state then called as a witness Danny DeRoche, who was qualified as an expert in fingerprint identification. *63 DeRoche testified he examined the following fingerprint records: (1) fingerprint card in the name of Steven Moten, BFI No. 2172, dated April 11, 1950, found in the Terrebonne Parish Sheriff's Office; (2) photocopy of fingerprints of Steven Moten, number 237914, in the records of the Texas Department of Corrections; and (3) fingerprints in the name of Steven Moten submitted by S/L Houma, dated March 1 and August 27, 1985. When DeRoche was asked for an opinion as to the identity of the prints contained in these documents, Moten's attorney objected "to his testimony as to any fingerprints that was [sic] compared in 1950 unless he establishes that those fingerprints are the same Steven Moten as this man here." The trial court overruled the objection. DeRoche then testified that the fingerprints he examined were "one and the same." On cross-examination, DeRoche testified he did not take the fingerprints on the 1950 card, the 1950 card indicates the prints were taken by Claude Matherne who is now deceased, and the prints on the 1950 card were the same as the other prints. When asked if he could testify if the fingerprints of the defendant in court were the same as those on the 1950 card, DeRoche responded "No". The 1950 and 1985 fingerprint cards were not introduced into evidence by the state. After the testimony of DeRoche was completed, the state rested. At this point, counsel for Moten objected to the admissibility of the Texas records on the ground that they were not certified in accordance with La.R.S. 15:529.1(F).

The Records of the Texas Department of Corrections
The records of the Texas Department of Corrections are a copy of a judgment, a copy of a sentence, copies of frontal and side photographs of prisoner number 237914 and a copy of the fingerprint card of Steven Moten, prisoner number 237914. The judgment and sentence show that Steven Moten was charged in case number 175992 with committing murder with malice aforethought, a felony, on March 11, 1972; that he was found guilty as charged on May 31, 1972; that he was sentenced to be confined in the custody of the Texas Department of Corrections for life; and that his conviction and sentence were affirmed by the Texas Court of Criminal Appeals on January 14, 1974. These records are authenticated by S.O. Woods, Jr. as the record clerk of the Texas Department of Corrections, who certified that he had legal custody of the originals and that the attached instruments were true and correct copies of records for Steven Moten, TDC # 237914, Cause # 175992. Woods' certificate is certified by Ralph A. Davis, Jr., County Court Judge. Davis' certificate is certified by Julia Rodriguez, a deputy clerk of Walker County Court.
To prove a defendant an habitual offender, the state must prove, among other things, that the defendant was convicted of a prior felony. State v. Chaney, 423 So.2d 1092 (La.1982). Prima facie proof of a prior felony conviction may be established by compliance with La.R.S. 15:529.1(F). However, La.R.S. 15:529.1(F) is not the exclusive method of proving a prior felony conviction; any other competent evidence may be used to establish such proof. State v. Curtis, 338 So.2d 662 (La. 1976). The Texas records are not authenticated in accordance with La.R.S. 15:529.1(F). They are properly authenticated pursuant to 28 U.S.C.A. § 1739. This authentication is valid, and the records are admissible in a Louisiana habitual offender trial. State v. Bernard, 366 So.2d 1294 (La.1978); State v. Glenn, 493 So.2d 806 (La.App. 2nd Cir.1986). These records are adequate proof of the prior felony conviction.

Sufficiency of Proof that the Defendant Committed the Prior Felony
The usual procedure to prove the defendant committed the prior felony is to have a fingerprint expert take the defendant's fingerprints at the habitual offender trial and compare them with the fingerprints in the prison records of the prior felony conviction. Bernard, 366 So.2d at 1298. That was not done in the instant case. The habitual offender trial herein was held on August 29, 1986. The habitual offender bill of information has a set of *64 fingerprints on it with a certificate from an officer (not DeRoche) of the Terrebonne Parish Sheriff's Office Crime Lab that "the above and foregoing fingerprints on this bill are the fingerprints of defendant, and that they were placed thereon by said defendant this 29 day of Aug. 1986." There is no evidence of record connecting these prints to the Texas prints. DeRoche testified he could not connect the defendant in court to the 1950 prints. DeRoche was not asked to connect the defendant in court with the Texas or the 1985 prints. Accordingly, the fingerprint evidence of record does not show that the Steven Moten convicted in this case is the same Steven Moten who was convicted of murder in Texas.
However, the Texas records contain a photograph with which the trial court could compare the present defendant. Further, the defendant's son, Gabriel, testified his father was in the penitentiary in Texas for murder from 1972 to 1982. The Texas fingerprint card shows Steven Moten was born in Terrebonne Parish, Louisiana, on July 23, 1921, had black hair and maroon eyes, was six feet-one inch tall and weighed 191 pounds. This evidence is sufficient to allow the trial court judge to reasonably infer beyond a reasonable doubt that the Steven Moten convicted herein is the same Steven Moten who was convicted in Texas.

The 1950 Fingerprint Card
It is clear that the 1950 fingerprint card was not properly authenticated to be considered as evidence. No attempt was made to have the card's legal custodian identify or authenticate it. No predicate foundation for its admissibility was presented, although such a card could be admissible in evidence. State v. Nicholas, 359 So.2d 965 (La.1978). However, DeRoche specifically testified he could not connect the defendant in court with the 1950 card. In this factual posture, the improper references in DeRoche's testimony to the 1950 card were harmless beyond a reasonable doubt.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We pretermit a determination of whether the contemporaneous objection rule of La.C.Cr.P. art. 841 is applicable in an habitual offender proceeding. Compare State v. Cox, 369 So.2d 118 (La.1979) with State v. Martin, 427 So.2d 1182 (La.1983) and State v. Whittaker, 496 So.2d 1103 (La.App. 4th Cir.1986).