STATE OF LOUISIANA
v.
HOSEA L. GALMON.
No. 2008 KA 0776
Court of Appeals of Louisiana, First Circuit.
September 19, 2008.
Not Designated for Publication
DOUG MOREAU, District Attorney, KORY J. TAUZIN, Assistant District Attorney, Attorneys for State of Louisiana.
PRENTICE L. WHITE, Louisiana Appellate Project, Attorney for Defendant-Appellant Hosea L. Galmon.
Before: PARRO, McCLENDON, and WELCH, JJ.
PARRO, J.
The defendant, Hosea Galmon, was charged by bill of information with aggravated incest, a violation of LSA-R.S. 14:78.1. The defendant pled not guilty and, following a jury trial, he was found guilty as charged. The defendant was sentenced to twelve years of imprisonment at hard labor. The defendant now appeals, asserting one assignment of error. We affirm the conviction and sentence.

FACTS
Emma Wallace had a romantic relationship with the defendant, but never married or lived with him. V.W., the victim, was born as a result of that relationship on February 7, 1988. V.W. lived with her mother in Baton Rouge. When V.W. turned sixteen years old, Emma found her rebellious behavior difficult to handle. For example, V.W. would have male visitors at her house, of which Emma disapproved. In August of 2004, at the suggestion of Emma, V.W. went to live with the defendant and the defendant's daughter, Courtney (V.W.'s half-sister).[1] Emma felt this arrangement would afford V.W. safety and prevent her from making "mistakes with some boy" when she (Emma) was not home.
In the 2004 fall semester, sixteen-year-old V.W. began receiving poor grades at Belaire High School. In February 2005, on one occasion V.W. forgot to bring a textbook to school. Emma called V.W. to discuss this issue and, during the conversation, V.W. began to cry. After some discussion, Emma asked V.W. if the defendant had been inappropriate with her. V.W. continued to cry. Emma told V.W. she was coming to pick her up. When Emma arrived at the defendant's house, V.W. told her that the defendant was having sex with her. Emma attacked the defendant, then took V.W. to Earl K. Long Hospital. Following this, V.W. went back to live with Emma.
At the hospital, Tammy Lowery, a registered nurse, performed a rape kit on V.W. Tammy noted in her Escort Counselor Duty Report that V.W. stated that her father had been touching her and having sex with her since she was sixteen years old. The last time the defendant had sex with V.W. was the day before she went to the hospital. According to Tammy's testimony at trial, she noted in her Gynecological Examination Report that V.W. had bathed, urinated, wiped her genitals, brushed her teeth, and changed her clothes before Tammy examined her. Tammy testified that all of these activities could dilute or erase completely any DNA that may have been present. Tammy also testified that in V.W.'s vaginal and perineal areas, there were no signs of tearing, abrasions, or trauma. While there was no visual evidence that a rape or penetration had occurred, Tammy testified that she could not say that a rape or penetration did or did not occur. According to Tammy, because of the stretchy nature and fast healing process of the concerned areas, a lack of findings suggestive of a rape or penetration is consistent with about ninety percent of these types of cases.
Alyson Saadi, an expert in DNA analysis with the State Police Crime Lab, testified that she tested the rape kit samples for semen. She found no presumptive positive test for seminal fluid in the samples. She noted that bathing reduces the chance of obtaining a DNA profile. Alyson also tested a debris collection swab and three hairs from pubic hair combings. The DNA profile from these samples was of V.W. According to Alyson, she did not find any other profiles in the evidence she tested except for V.W's profile.
V.W. testified that in October of 2004, the defendant rubbed her breasts. A couple of weeks later, the defendant began having intercourse with her on a regular basis. According to V.W.'s testimony, for about a four-month period, until late February of 2005, the defendant had sex with her every other day. V.W. did not tell anyone, because the defendant told her that no one would believe her. At one point, V.W. wanted to kill herself. The defendant did not testify at trial.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues that the evidence was not sufficient to support a conviction. Specifically, the defendant contends that V.W. fabricated the story of sexual abuse because she resented him.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const. amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585 (La. App, 1st Cir. 6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statute 14:78.1 provides, in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological ... relatives: child ... .
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
In addition to the generalized testimony that the defendant had sex with her every other day for four months, V.W. also provided testimony of specific incidents of sexual contact by the defendant. For example, in October of 2004, while V.W. was ill and resting in the defendant's bed, the defendant rubbed her breasts while he was allegedly sleeping. The defendant apologized and told V.W. that he thought V.W. was his girlfriend, Irma. A few weeks later, V.W. and Courtney were watching television in the defendants room. Courtney left the room, and the defendant proceeded to have sexual intercourse with V.W. The defendant told V.W. that he was relieving her of stress. Following this incident, the defendant frequently had sexual intercourse with V.W. Sometimes, the defendant would wake up V.W. in her bedroom and tell her to go in his bedroom. On one occasion when she refused, the defendant dragged her to the kitchen, where V.W. stood up and walked the rest of the way to the defendant's bedroom. According to V.W., the defendant did not ejaculate on her, but rather went to the bathroom to ejaculate. On one occasion, the defendant used a condom when V.W. was on her period. Also, every incident of sexual intercourse between the defendant and V.W. occurred in the defendant's bedroom. After V.W. told her mother that the defendant was having sex with her, Emma brought V.W. to the hospital, where Tammy performed a rape kit on her. According to Tammy's trial testimony, when she made initial contact with V.W., V.W. was laying on her side curled up in the fetal position, crying, and whispering her answers. V.W. was very anxious and upset.
The defendant suggests in his brief that V.W. concocted the story of being raped by him because she resented him and was jealous of his financial achievements and of the way he treated his other children. On cross-examination, V.W. testified she used to hate the defendant because he was not around for her. She also thought the defendant was selfish because he had money and cars, yet would not let Emma buy a car from him. On redirect examination, V.W. was asked, "Were you so resentful that you would make some story up about him having sex with you?" V.W. responded, "Never." V.W. also testified that she told no one about the incidents because the defendant told her that no one would believe her. Defense counsel noted the inconsistency in V.W.'s testimony when V.W. further testified that she felt like she could tell her mother anything. Also on cross-examination, Tammy testified that during her initial contact with V.W., Tammy noted on her report that ejaculation was suspected. In that portion of the report entitled "Ejaculation Suspected," Tammy wrote the word "legs" in the space following "Other." The defendant contends this testimony was inconsistent with V.W.'s testimony that the defendant did not ejaculate on her, but would ejaculate in the bathroom. Tammy further testified on cross-examination that there was no visual evidence of rape or penetration.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932.
The jury was presented with two theories: the state's theory that the defendant repeatedly sexually abused his minor daughter, V.W., and the defense theory that the defendant did not sexually abuse V.W. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Moten, 510 So.2d 55, 61-62 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
In finding the defendant guilty, it is clear the jurors rejected the hypothesis of innocence and found credible V.W.'s testimony regarding the defendant's sexual abuse of her. The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467, 469 (La. App. 1st Cir. 1987), writ denied, 519 So.2d 113 (La. 1988). We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985).
Based on the foregoing and after a thorough review of the record, we find that the evidence supports the guilty verdict. We are convinced that viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of aggravated incest. See Moten, 510 So.2d at 61-62.
The assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant had two young sons who also stayed with the defendant at times.