DRAKE, J.
12The defendant, Jimmie Howard Moy-ers, was charged by amended bill of information with one count of theft greater than five-hundred dollars, but less than fifteen-hundred dollars, a violation of La. R.S. 14:67(B)(2). At his arraignment, he pled not guilty. Following trial, he was found guilty as charged by a unanimous jury. The defendant filed motions for post-verdict judgment of acquittal and new trial, which were denied. He was sentenced to five years at hard labor. A motion to reconsider sentence was filed but also denied by the trial court.
The State subsequently filed a habitual offender bill of information seeking enhancement of the defendant’s sentence. Following a hearing, the defendant was adjudged a fourth-felony habitual offender [1] and was sentenced to twenty years at *742 hard labor without benefit of probation or suspension of sentence and with credit for time served. He now appeals, assigning error to the sufficiency of the evidence and to the trial court’s denial of his motion for post-verdict judgment of acquittal. For the following reasons, we affirm the defendant’s conviction, habitual offender adjudication, and enhanced sentence.

STATEMENT OF FACTS

On October 10, 2013, Christopher Lowe, a loss prevention officer with Home Depot, received notice from a store associate that “she just had a gentleman run out of the store with a basket full of product.” Lowe proceeded to speak to the associate, who described the man (the defendant), as an “elderly white male.” Lowe was informed that the associate called the defendant back to verify his receipt, but that he “didn’t stop” and “kept going.” He was also able to speak to |3two customers who provided a partial license plate number of the vehicle in which the defendant left. Lowe also spoke with the associate in the hardware department who was assisting the defendant and was advised the defendant asked for two nail guns, two compressors, and three boxes of nails. Additionally, another Home Depot associate conducted an inventory search to determine which items were missing and provided the information to Lowe. Accordingly, Lowe identified that the only two items which were missing from the store were two boxes of nails, valued at $79.63 per box.
Lowe later retrieved the store’s surveillance footage, which was played before the jury. The footage indicated a white Dodge pickup truck pulled underneath the eon-tractor’s canopy, and the defendant entered the store empty handed. The defendant then parked his buggy, exited the store to look outside, then returned to his buggy, and began to leave with the items. Lowe testified at trial that as the defendant left the store, the returns cashier “holler[ed] at him for his receipt, and he looks at her and keeps going.” From the surveillance footage, Lowe was able to identify four items in the defendant’s buggy. As the defendant exited the store, he approached the white Dodge pickup, where •a white female exited the truck from the passenger side and assisted the defendant in tossing the items into the truck’s bed. Lowe specifically testified the female threw one item, and the defendant threw three.
After reviewing the surveillance footage, Lowe created a training receipt reflecting the'value of the items taken. He identified a welder, valued at $269.00, an air compressor, valued at $159.00, and two boxes of framing nails, valued at $79.63 a piece. Lowe admitted that upon his review of the footage, he was unable to read the labels on the nail boxes, but after he conducted an “on hand” count and compared the results to the store’s inventory, he was able to determine the specific boxes of nails which were stolen.
| ¿Deputy Bubba Stipe of the St. Tammany Parish Sheriffs Office was dispatched to the Home Depot store after learning of the theft. When he arrived at the store, Deputy Stipe spoke with Lowe, who provided a description of the defendant’s vehicle, information regarding a distinctive window decal on the vehicle, a partial license plate number, and information that the defendant was in the truck’s bed with *743 the stolen items. Deputy Stipe did not have sufficient information to further his investigation, so he requested assistance from his supervisor Sergeant Alex Dantag-nan.
Sergeant Dantagnan did not respond to Home Depot, but rather, using the descriptive information of the defendant’s vehicle obtained by Deputy Stipe, conducted a search using the Automatic License Plate Recognition program. Sergeant Dantagnan located the defendant’s vehicle using the program, obtained a complete license plate number, and identified the home address connected to the license plate.
Later that evening, Deputy Stipe and Sergeant Dantagnan traveled to the identified address. Though the defendant was not present, the officers made contact with the defendant’s mother, who provided them with the defendant’s cell phone number. Deputy Stipe spoke with the defendant by phone, and though the two arranged a meeting, the defendant did not appear. The officers then turned the case over to the St. Tammany Parish Sheriffs Office investigations department.
Detective Jeffrey Roberts, who picked up the investigation, was unable to reach the defendant by telephone and, therefore, traveled to the address identified on the defendant’s driver’s license to arrange a meeting at his office. The defendant was present upon Detective Robert’s arrival and, after being informed of |fihis Miranda rights,[2] verbally agreed to waive his rights. The defendant agreed to meet with Detective Roberts the next day.
Because the defendant did not have a means of transportation, Detective Roberts returned to the defendant’s house the following day to pick him up for the scheduled meeting. Prior to meeting, Detective Roberts had obtained an arrest warrant and advised the defendant that he was under arrest. Along their way to the sheriffs office, the defendant led Detective Roberts to the house where the compressor, which remained unopened, was stored. Once the two were back at Detective Robert’s office, the defendant was re-read his Miranda rights. The defendant acknowledged these rights and signed a waiver of rights form.[3] Based on the interview, Detective Roberts learned that the defendant pawned the welding machine at Cash America Pawn. Further, Detective Roberts was told by the defendant that his intent was to obtain nail guns from the Home Depot associate, but because of store policy, he was not allowed to have custody of them. Also, during this interview, the defendant told Detective Roberts that he was able to obtain a welding machine, two packs of nails, specifically “grip tight nails,” and an air compressor. Moreover, the defendant informed Detective Roberts *744 that his plan was for another person to return the stolen items back to Home Depot where he could obtain store credit and then purchase additional tools. The defendant also informed Detective Roberts that if the store associate would have given him the nailers from the top shelf, rather than place them on the counter, he would have [(¡stolen them as well. Detective Roberts retrieved and returned the air compressor and welding machine to Home Depot but never located the missing boxes of nails.

SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, the defendant argues the evidence is insufficient to support the jury’s verdict. In his second assignment of error, he claims the trial court erred in denying his motion for post-verdict judgment of acquittal. The defendant combines these assignments of error in his brief. He specifically argues that because Lowe was unable to positively identify the type and value of the two boxes of nails that were stolen, “there is ample evidence to support reasonable doubt,” which he avers warrants reversal of his conviction. On appeal, the defendant does not challenge his identity or his habitual offender adjudication. Furthermore, he acknowledges his confession to the theft of the welding machine, compressor, and two boxes of nails, and that the value of the welding machine and compressor totaled $428.00.
The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime, and defendant’s identity as the perpetrator of that crime, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Patton, 2010-1841 (La.App. 1 Cir. 6/10/11), 68 So.3d 1209, 1224. A post-verdict judgment of acquittal “shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.” La.C.Cr.P. art. 821(B). In conducting this review, we must also be expressly mindful of Louisiana’s circumstantial evidence test, i.e., “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable 17hypothesis of innocence.” La. R.S. 15:438; State v. Millien, 2002-1006 (La.App. 1 Cir. 2/14/03), 845 So.2d 506, 508-09.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and 2000-0895 (La.11/17/00), 773 So.2d 732.
Theft is defined in La. R.S. 14:67(A) as “the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.” Theft is a specific intent crime. State v. Bean, 2004-1527 (La.App. 1 Cir. 3/24/05), 899 So.2d 702, 707, writ denied, 2005-1106 (La.11/3/06), 940 So.2d 652. Louisiana Revised Statutes 14:10(1) *745 defines specific criminal intent as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Thus, specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant’s actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Henderson, 99-1945 (La.App. 1 Cir. 6/23/00), 762 So.2d 747, 751, writ denied, 2000-2223 (La.6/15/01), 793 So.2d 1235.
Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of theft greater than five-hundred dollars but less than fifteen-hundred dollars. The verdict rendered against the defendant indicates the jury rejected the defense’s theory that the State failed to prove the type and value of the nails stolen by the defendant. Lowe’s uncontradicted testimony indicated that after the theft was discovered, an inventory search was conducted, revealing two missing items — two boxes of nails valued at $79.63 per box. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). No such hypothesis exists in the instant case.
This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt. Furthermore, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331.
After reviewing the evidence, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs |9by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).
Therefore, because we find the jury’s decision was not irrational based on the facts presented to them, we also find the trial court did not err in denying the defendant’s motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821(B). As such, these assignments of error are without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND ENHANCED SENTENCE AFFIRMED.
J. THERIOT, concurs.

. Predicate #1 was set forth as the defendant’s May 16, 2007 guilty plea, under Fortieth Judicial District Court Docket # 2006-CR-678, to Unauthorized Use of a Motor Vehicle. Predicate #2 was set forth as the defendant’s January 19, 2011 guilty plea, under *742 Twenty-Second Judicial District Court Docket # 416996, to Possession of a Schedule II Controlled Dangerous Substance (cocaine). Predicate #3 was set forth as the defendant's January 19, 2011 guilty plea, under Twenty-Second Judicial District Court Docket # 409121, to Possession of a Schedule II Controlled Dangerous Substance (cocaine).

. Prior to any questioning, a person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided 'the waiver is made voluntarily, knowingly, and intelligently. Miranda v. Arizona, 384 U.S. 436, 444-445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. During trial, there were questions regarding whether the defendant was actually under arrest at the time of his interview. Prior to picking up the defendant from his house, which occurred two weeks after the actual offense took place, Detective Roberts had obtained an arrest warrant from the district court. The assistant district attorney questioned whether Detective Roberts had told the defendant he was going to let him go or that the defendant wasn’t under arrest at the time of the interview. Detective Roberts testified that the defendant was under .arrest during the interview.