NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 KA 0293

STATE OF LOUISIANA

VERSUS

JONATHAN ROBERTSON

*Judgment Rendered:*___**NOV 0 6 2020**

\*\*\*\*\*\*\*\*

Appealed from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit No. 04-17-0753

The Honorable Beau Higginbotham, Judge Presiding

\*\*\*\*\*\*\*\*

Hillar C. Moore, III
District Attorney
Dylan C. Alge
Assistant District Attorney
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellee
State of Louisiana

Sherry Watters
New Orleans, Louisiana

Counsel for Defendant/Appellant
Jonathan Robertson

\*\*\*\*\*\*\*\*

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

**LANIER, J.**

The defendant, Jonathan Robertson, was charged by grand jury indictment with armed robbery (count 1), a violation of La. R.S. 14:64; and attempted armed robbery (count 2), a violation of La. R.S. 14:27 and 14:64.[1] He pled not guilty and, following a jury trial, was found guilty as charged on both counts. For the armed robbery conviction, the defendant was sentenced to fifty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the attempted armed robbery conviction, he was sentenced to twenty-five years imprisonment at hard labor. The sentences were ordered to run consecutively. The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating four assignments of error. We affirm the attempted armed robbery (count 2) conviction and sentence. Because of a ten-to-two jury verdict, we set aside the armed robbery (count 1) conviction and sentence and remand for a new trial.

## FACTS[2]

On July 1, 2015, at about 3:45 a.m., security guard Warren Lands completed his rounds in the parking lot of Comfort Suites Hotel on Valley Creek Drive in Baton Rouge. Lands went to his van, which was in the parking lot, and sat in the driver's seat, with the driver-side door open. The defendant approached Lands with a .380 semi-automatic pistol. The defendant pointed the gun at Lands's face and told him to "give it up." The defendant patted Lands's pockets, but did not

---

[1] The defendant was also indicted for two counts of second degree murder. The defendant filed a motion to sever the armed robbery and attempted armed robbery counts from both second degree murder counts. The motion to sever was granted.

[2] As discussed in the second assignment of error, only the attempted armed robbery is addressed herein since the conviction and sentence for the armed robbery (count 1) have been set aside. Any pertinent facts regarding the armed robbery conviction are in the third assignment of error.

find anything. Lands then grabbed the defendant's hand holding the gun. A struggle ensued. Lands got out of his van while still wrestling for control over the gun. The defendant bit Lands on his arm, over Lands's shirt sleeve. At this point, Lands yanked the gun from the defendant's hand, and the defendant ran. As the defendant was running, Lands shot at the defendant with the defendant's gun. The defendant fell to the ground and Lands heard him yell, "I'm down." Lands walked to the defendant, stood over him, and tried to shoot the defendant again, but the gun apparently jammed. Lands went back to his van to retrieve his own gun. The defendant got up and fled into a nearby wooded area. Lands had the night-desk clerk call the police.

The defendant had gloves with him and was wearing a baseball cap. As a result of the struggle with Lands, the defendant left behind one glove, his baseball cap, and his gun. These items were tested, and the defendant's DNA was found on the baseball cap.

About nine weeks after the incident, Lands was shown a six-person photographic lineup by the police. Lands picked two people from the lineup, one of which included the defendant. Lands identified the defendant in court as the person who tried to rob him..

The defendant did not testify at trial.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues that Lands's in-court identification of him was not admissible because four years earlier, shortly after the incident, Lands could not identify the defendant in a photographic lineup.

The defendant asserts the in-court identification of him was unduly suggestive. According to the defendant, Lands had been told the suspect was identified by DNA, and he had gone over all of the evidence with the assistant

3

district attorney. Further, in the courtroom, the defendant was the only person there, so there was no one else but him for Lands to identify.

The defendant herein did not file a motion to suppress identification. At trial, the defendant did not lodge any objections before, during, or after Lands's in-court identification of the defendant. Further, the defendant lodged no objections to the introduction into evidence of the photographic lineup or any of Lands's testimony regarding his identification of the defendant in the photographic lineup. A defendant who fails to file a motion to suppress identification, and who fails to object at trial to the admission of the identification testimony, waives the right to assert the issue on appeal. **State v. Moody**, 2000-0886 (La. App. 1st Cir. 12/22/00), 779 So.2d 4, 7-8, writ denied, 2001-0213 (La. 12/7/01), 803 So.2d 40; see La. Code Crim. P. arts. 703 & 841. See also **State v. Naas**, 409 So.2d 535, 547 (La. 1981), cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982); **State v. Phanor**, 325 So.2d 579, 580 (La. 1976).

The defendant has waived his right to assert this assignment of error and, accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues that his ten-to-two jury verdicts are unconstitutional.[3]

In the recent decision of **Ramos v. Louisiana**, __ U.S. __, 140 S.Ct. 1390, 1397, 206 L.Ed.2d 583 (2020), the United States Supreme Court overruled **Apodaca v. Oregon**,[4] 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) and held that the right to a jury trial under the Sixth Amendment of the United States

---

[3] The defendant's pretrial motion for a unanimous jury verdict was denied.

[4] Oregon's non-unanimous jury verdict provision of its state constitution was challenged in **Apodaca**. **Johnson v. Louisiana**, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), decided with **Apodaca**, upheld Louisiana's then-existing constitutional and statutory provisions allowing nine-to-three jury verdicts.

Constitution, incorporated against the States by way of the Fourteenth Amendment of the United States Constitution, requires a unanimous verdict to convict a defendant of a serious offense. The **Ramos** Court further noted that its ruling applied to those defendants convicted of felonies by non-unanimous verdicts whose cases are still pending on direct appeal. **Ramos**, 140 S.Ct. at 1406.

The defendant asserts in brief that he was convicted by ten-to-two non-unanimous verdicts for both the armed robbery conviction and the attempted armed robbery conviction. This is not correct. The appellate record transcript indicates that, following polling of the jurors, the armed robbery guilty verdict was ten-to-two, and the attempted armed robbery guilty verdict was unanimous.

Accordingly, only the defendant's armed robbery (count 1) conviction and sentence are set aside, and the case is remanded for a new trial on the armed robbery charge only. Any arguments raised by the defendant in brief regarding the armed robbery conviction and/or sentence are moot. As set out below, the attempted armed robbery (count 2) conviction and sentence are affirmed.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, the defendant argues the evidence was insufficient to support the convictions for attempted armed robbery and armed robbery. Specifically, the defendant contends that his identity as the perpetrator was not established by the State.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-

0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144. Furthermore, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. **State v. Hughes**, 2005-0992 (La. 11/29/06), 943 So.2d 1047, 1051. See **State v. Davis**, 2001-3033 (La. App. 1st Cir. 6/21/02), 822 So.2d 161, 163-64.

Attempted Armed Robbery

In his brief, the defendant notes that Lands did not see the defendant's shoes, and he was not sure if the defendant was wearing gloves.. Also, the dome light in the van was off. The defendant further points out that no hospital reported any gunshot wounds. When Lands looked at the photographic lineup, he picked two suspects. Also, the defendant asserts, after the incident, police told Lands there were positive DNA results. Based on the foregoing, according to the defendant, Lands's delayed courtroom identification of the defendant as the perpetrator was unreliable and, as such, the State did not negate the reasonable probability of misidentification.

We address first the defendant's claim in brief, "Shortly after the incident, police told Mr. Lands there was a [sic] positive DNA results ." The defendant's assertion is incorrect. On the three pages referenced by the defendant, there is no

6

testimony indicating that the police told Lands there were positive DNA results. In fact, on page 400 of the record, Lands testified that, after the incident, police officers went to his place of employment (the hotel) to keep in touch and to make sure they "had good info on me to keep in contact." The following exchange then took place:

Q. And did you receive any DNA information or lab information from those officers?
A. No, I didn't.

On page 388, however, the following exchange took place:

Q. Oh, okay. So, you mentioned DNA. How do you know about the DNA in this case or lack of DNA in this case?
A. Because one of the – one of the police officers had talked to me. This was – this was years ago.

Nevertheless, when Lands looked at the six-person photographic lineup, he first identified the defendant as the perpetrator. He also picked another person in the lineup. Lands testified that he never "faulted away" from his pick of the defendant as the perpetrator. Lands indicated he picked the other person at that time so as not to exclude that person. Later, when defense counsel pointed out Lands was not one-hundred percent positive of his identification of the defendant in the photographic lineup, Lands replied, "I told him I was leaning more towards [the defendant], but I couldn't exclude the other guy, number three, out."

Regarding the gloves, Lands testified he did tell the police about the gloves. Defense counsel appeared to suggest that the police report made no mention of gloves. Lands testified, however, that the defendant had gloves with him, and that he told the police that the defendant had gloves. When asked whether this was an error on the part of the reporting officer, Lands responded, "Should be, could be, but I definitely mentioned it."

In his testimony, Lands indicated that his struggle with the defendant lasted two to three minutes. During the struggle, Lands testified they were "face-to-face,

7

like, real close.". After the defendant was apparently shot and on the ground, Lands testified that there was a parking lot light on a pole and that he stood over the defendant for about ten seconds after he shot at the defendant. Lands indicated that, at this time, the defendant was on his back and Lands could see the defendant's face. When Lands pulled the trigger again, he testified he "looked at him square in his eyes."

At trial, Lands identified the defendant as the person who tried to rob him. On direct examination, the following exchange took place:

Q. Do you know if the person, the defendant's, face was covered at that point?
A. It wasn't covered at all.
Q. Okay. And I've asked you this before: The person that did this, do you see them in the courtroom?
A. Yes. That's him right there.
Q. Okay. And we've talked about this and I said – what did I tell you?
A. If I didn't know who it was, it was okay if I couldn't identify him.
Q. Okay. But at this point, it's been four years.
A. Yes. July 1st, 2015.
Q. And are you sure that's the person?
A. I am a hundred percent positive.

Lands testified the defendant was "in all black with the black and red baseball hat on," and he had black gloves and was wearing jeans. During the struggle over the defendant's gun, the defendant dropped his baseball cap and glove on the ground. Both were collected at the scene by the police. The baseball cap was tested, and the defendant's DNA was found on it.

Based on the foregoing, the jury could have rationally concluded that the State proved the defendant's identity. Through eyewitness testimony, the defendant was identified as the perpetrator, and the witness's identification was substantiated by physical evidence, particularly DNA evidence. See **State v. Billard**, 2003-319 (La. App. 5th Cir. 7/29/03), 852 So.2d 1069, 1072-73, writ denied, 2003-2437 (La. 2/6/04), 865 So.2d 739 (although the victim could not

identify the defendant from the photographic lineup, other evidence at trial negated the reasonable probability of misidentification).

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. **State v. Weary,** 2003-3067 (La. 4/24/06), 931 So.2d 297, 311-12, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006). The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. **State v. Dickerson,** 2016-1336 (La. App. 1st Cir. 4/12/17), 218 So.3d 633, 640, writ denied, 2017-1147 (La. 8/31/18), 251 So.3d 1062. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. **State v. Mitchell,** 99-3342 (La. 10/17/00), 772 So.2d 78, 83. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. **State v. Higgins,** 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Moten,** 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). The jury heard all of the testimony and viewed the physical evidence presented to it at trial and found the defendant guilty. In finding the defendant guilty, the jury clearly rejected the defense's theory of misidentification. See **Weary,** 931 So.2d at 311-12; **Moten,** 510 So.2d at 61.

After a thorough review of the record, we find the evidence negates any reasonable probability of misidentification and supports the jury's unanimous

guilty verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the attempted armed robbery of Warren Lands. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

Armed Robbery

On July 1, 2015, less than two hours before Lands was robbed, Vindushi Sood was robbed of about $70 at around 2:00 a.m. while working at the Cracker Barrel store on Jefferson Highway in Baton Rouge. The defendant argues that there was no identification and no forensic evidence connecting him to this crime and, as such, the evidence was insufficient to support the conviction.[5]

The defendant notes that the perpetrator, captured on the store video, was wearing red shoes, black clothing, a glove, a covering on his face, and a baseball cap. According to the defendant, the insignia on the cap could not be identified from the video.

Sood stated the perpetrator was African-American, had a hat, and was "covering his face." He also had gloves. She further stated that he had a gun, walked behind the counter to the register, and made her put the money in a bag. He then took the bag and ran away. Sood was shown a photographic lineup and was not able to identify the perpetrator.

Lands testified the defendant had gloves with him, rather than on, and that during the struggle, he dropped his hat and glove on the ground. Lands also noted that the defendant was wearing one glove, and holding the other glove. This could

_____

[5] When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. While the defendant is entitled to a new trial because of a non-unanimous jury verdict for the armed robbery conviction, sufficiency is still reviewed because the accused may be entitled to an acquittal rather than a new trial. See **State v. Hearold**, 603 So.2d 731, 734 (La. 1992).

explain how the defendant dropped one dark colored glove in the parking lot. Similarly, Sood noted the perpetrator had one glove on the hand he used to touch things with; she was not sure if he was wearing a glove on the hand he was holding his gun with. The Cracker Barrel video showed the perpetrator walking into the store with a dark colored glove on his left hand and a handgun in his right hand. There was no glove on his right hand. Lands testified the defendant was dressed in black. According to Lands, the defendant was wearing a black T-shirt and black jeans. The Cracker Barrel video showed the perpetrator wearing a black short-sleeved shirt and black jeans.

At the scene of the attempted robbery of Lands, the photographs taken of the baseball cap[6] the defendant left behind show an Atlanta Falcons cap. The panels (the top and sides of the cap but not the visor) are black and the bill or visor is red. The button on top of the cap is red. There is an Atlanta Falcons logo on the front and on the back. The Falcons logo is black and red with a white background. In the middle of the visor of the cap, there is a white, circular logo. On this white logo, there is a red strip across the middle with "9FFTY" in white. Above this red strip is a red square.

The Cracker Barrel video shows all of the same colors and features of the baseball cap worn by the perpetrator, including the distinctive white circle in the middle of the visor. While the white number and letters cannot be identified in the video, the red strip across the white circle and a small red patch above the red strip can be seen.

Based on all of the foregoing similarities, particularly with the baseball cap, a rational juror could have concluded that the perpetrator at the Cracker Barrel and the perpetrator at the Comfort Suites Hotel was one and the same person, the

[6] As used here, "baseball cap" describes the common type of sports cap with a bill, or visor, a button on top, and front, side, and back panels.

11

defendant. Any juror could have reasonably concluded that the defendant, dressed in black and wearing an Atlanta Falcons baseball cap robbed Sood at the Cracker Barrel, then less than two hours later, tried to rob Lands; in his struggle with Lands, the defendant dropped and left behind the Atlanta Falcons baseball cap that he was wearing when he had robbed Sood. See **Moten**, 510 So.2d at 61. See also **Calloway**, 1 So.3d at 422-23; **Higgins**, 898 So.2d at 1226.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant argues his sentences are excessive. Specifically, the defendant contends that his sentences are excessive because they were imposed consecutively.

As noted, the armed robbery sentence has been set aside. Thus, regarding this appeal, the defendant is serving only a single sentence for the attempted armed robbery conviction. Accordingly, any argument by the defendant regarding consecutive sentences is moot.

This assignment of error is without merit.

**CONVICTION AND SENTENCE AFFIRMED AS TO COUNT 2. CONVICTION AND SENTENCE SET ASIDE AS TO COUNT 1 AND REMANDED FOR NEW TRIAL.**