938 So.2d 168 (2006)
STATE of Louisiana
v.
James THOMAS.
No. 2005 KA 2210.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
Rehearing Denied August 22, 2006.
*170 Camille A. Morvant, II, District Attorney, Steven M. Miller, Assistant District Attorney, Thibodaux, for the State of Louisiana.
Mary E. Roper, Baton Rouge, for Defendant-Appellant James Thomas.
*171 Before: KUHN, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
The defendant, James Thomas, was charged by bill of information with vehicular homicide (count one) and fourth or subsequent offense DWI (count two), violations of La. R.S. 14:32.1 and La. R.S. 14:98. The defendant entered a plea of not guilty. The charges were severed, and count two was ultimately nol prossed by the State. After a trial by jury, the defendant was found guilty of vehicular homicide. The defendant was sentenced to 20 years imprisonment at hard labor. The trial court ordered that the first year of the sentence be served without the benefit of parole. The defendant was then adjudicated a fourth felony habitual offender. The trial court vacated the previously imposed sentence and sentenced the defendant to 40 years imprisonment at hard labor. The trial court denied the defendant's motion for reconsideration of sentence. The defendant now appeals, arguing that the evidence is insufficient to support the conviction and that La. R.S. 15:529.1 is unconstitutionally vague. For the following reasons, we affirm the conviction of vehicular homicide, reverse the habitual offender adjudication, vacate the habitual offender sentence, reinstate the sentence on vehicular homicide, and remand for further proceedings on the habitual offender bill.

STATEMENT OF FACTS
On or about February 14, 2004, at approximately 8:30 p.m., Officers Brook Angelette and Kurt Landry (both of the Greater Lafourche Port Commission Harbor Police) left their office in separate police units to conduct street patrol. The two officers were responding to an electrical power outage that had just occurred in the area. After receiving a dispatch regarding a utility pole, the officers headed toward Louisiana Highway 1 in Lafourche Parish. The officers promptly arrived at the scene of a downed utility pole and electrical wires lying across the highway. Traffic was stalled due to the downed pole and wires. The officers observed an overturned (upside down) 1985 GMC Jimmy utility-style vehicle in a body of water located off the shoulder of Louisiana Highway 1, just south of Louisiana Highway 39. An adult male and a male child (the defendant and his eight-year-old son) walked up the bank toward the highway. The officers asked the defendant if anyone else was in the vehicle, and the defendant informed them that his daughter (the eight-year-old victim) was still in the vehicle. The officers ran into the water toward the vehicle. They ultimately pulled the victim, who was restrained in the front passenger seat at the time of their approach, out of the vehicle and took her to the shoulder of the highway.[1]
Officer Angelette attempted to perform CPR on the victim but could not detect any vital signs. The autopsy revealed the victim's cause of death to be a broken neck and severed spinal column, injuries consistent with the victim having been a restrained guest passenger in a vehicle that was involved in a high-impact collision. The defendant's blood-alcohol concentration, determined from a blood sample taken at 10:50 p.m. (on the night of the accident) at Terrebonne General Medical Center, was .24 grams percent.

ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, the defendant avers that the evidence presented *172 herein was insufficient to support the conviction. The defendant concedes that he drove his vehicle off the highway and that the accident resulted in the death of the victim. The defendant argues, however, that the causation element of the offense was not proven. The defendant notes that the traversed area was under construction and argues that posted signs did not provide adequate response time to a bump in the highway. The defendant avers had he been sober, due to the road conditions, the accident still could have occurred. The defendant further notes that the accident occurred on a windy night and that his vehicle, a sports utility vehicle, was "top heavy." The defendant concludes that the circumstances indicated that forces other than the defendant's intoxication could have caused the accident.
In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard of appellate review, adopted by the Legislature in enacting La.Code Crim. P. art. 821 (pertaining to motions for post verdict judgment of acquittal based on insufficiency of evidence), is whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Brown, XXXX-XXXX, p. 22 (La.4/12/05), 907 So.2d 1, 18. The Jackson standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, XXXX-XXXX, p. 5 (La.App. 1 Cir. 2/14/03), 845 So.2d 416, 420.
Vehicular homicide is defined in La. R.S. 14:32.1, in pertinent part, as follows:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
In State v. Taylor, 463 So.2d 1274, 1275 (La.1985), the Louisiana Supreme Court concluded that, under the vehicular homicide statute, "the [S]tate . . . must prove that an offender's unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being." See also State v. Ritchie, 590 So.2d 1139, 1149 (La.1991) (on rehearing). It is insufficient for the State to prove merely that the alcohol consumption "coincides" with the accident. Taylor, 463 So.2d at 1275. The vehicular homicide statute does not impose criminal liability based solely on the coincidental fact that the fatal accident occurred (without fault on the part of the accused) while the accused was operating a vehicle under the influence of alcohol. Ritchie, 590 So.2d at 1149. Compare State v. Archer, 619 So.2d 1071, 1074 (La.App. 1 Cir.), writ denied, 626 So.2d 1178 (La.1993). Causation is a question of fact that should be *173 considered in light of the totality of circumstances surrounding the ultimate harm and its relation to the actor's conduct. State v. Kalathakis, 563 So.2d 228, 231 (La.1990); State v. Trahan, 93-1116, p. 11 (La.App. 1 Cir. 5/20/94), 637 So.2d 694, 701.
State witness J.T. (the defendant's eight-year-old son) and the victim, were the occupants of the vehicle being driven by the defendant. J.T. indicated that at the time of the accident, the defendant was driving them from Gulfport, Mississippi, to Grand Isle, Louisiana. J.T. further testified that after initially leaving their home in Gulfport, the defendant returned home to retrieve his vodka before recommencing the trip. J.T. had fallen asleep in the back of the vehicle before the accident took place. He woke up after the vehicle overturned. J.T. indicated that the defendant assisted him out of the vehicle.
State witnesses Sergeant Richard Blanchard, an expert in accident reconstruction, and Louisiana State Trooper Donald R. Callais, Jr., reconstructed the instant accident. The scene of the accident consisted of a curved roadway located just past Louisiana Highway 39 (Fourchon Road). The officers examined the point of the departure of the vehicle from the highway and found no evidence of an abrupt exit. Sergeant Blanchard confirmed that the manner of departure from the highway was consistent with the driver being asleep or inattentive. The accident was reconstructed as follows.
The defendant was traveling in the southbound lane. The defendant traversed a milled section of the highway. The milled section, located along a curve, was an area that was being resurfaced. The surface of that particular portion of the highway had been grinded and chopped by a machine. A tapered area of joint or asphalt was located at the end of the milled area to provide a smooth transition to the normally surfaced portion of the highway. The milled area was approximately 93 feet long. After traversing the milled section of the highway, the defendant continued his travel in the southbound lane for approximately 115 feet. The defendant's vehicle then veered off the highway. After the vehicle exited the roadway, it began spinning or traveling sideways counterclockwise, consistent with abrupt steering. The vehicle ultimately crashed into a utility pole. The distance traveled after the departure from the highway to the point of impact was approximately 103 feet. After the vehicle struck the utility pole, it overturned and came to rest in the body of water.
During the cross-examination of Sergeant Blanchard and Trooper Callais, the defendant elicited testimony to show that an end construction sign was located north of a bump sign and the actual bump or tapered area leading to the normally surfaced portion of the highway. The bump sign was located approximately 22 feet prior to the bump. Assuming that the driver was traveling at 55 miles per hour and would be able to see the sign ten feet before approaching it, Sergeant Blanchard estimated a driver would have one-half of a second to react before the actual bump. Sergeant Blanchard testified that the average response time for a driver confronted with an unforeseen event was three-fourths of a second. Sergeant Blanchard performed test runs of the area with a police unit, a large sedan, while the defendant traveled in a sports utility vehicle. Sergeant Blanchard confirmed that sports utility vehicles are "top-heavy" or more difficult to control in certain situations.
Sergeant Blanchard indicated there was no evidence that the defendant used or attempted to use his brakes before the point of impact. During re-direct examination, *174 Sergeant Blanchard confirmed that the milled section of the highway, the placement of the signs, or the defendant's vehicle being top-heavy did not contribute to the instant accident.
Upon his arrival at the scene, Lieutenant David Landry (the shift scene supervisor) stepped into the ambulance in which the defendant had been placed. Lieutenant Landry indicated that he smelled the scent of alcohol coming from the defendant's body. The defendant was asleep when Lieutenant Landry was in the ambulance. Lieutenant Landry contacted Trooper Frank Besson and instructed him to travel to Terrebonne General Medical Center to obtain a blood sample from the defendant. When Trooper Besson arrived at the hospital, he informed the defendant of his Miranda rights and collected the blood sample drawn by Melody Luke, a registered nurse. Trooper Besson also noted the scent of alcohol emanating from the defendant.
After being advised of his rights, the defendant stated that he was traveling at 65 miles per hour at the time of the accident. The defendant informed Trooper Besson that an 18-wheeler had run him off the roadway. In an apparent attempt to rebut the defendant's claim regarding an 18-wheeler, the State elicited testimony from Ray J. Cheramie, who was traveling north on Louisiana Highway 1 at approximately 8:15 p.m. on the night in question when he approached the scene of the accident. Cheramie stated that before he reached the scene, a white pickup truck, also traveling northbound, passed him. Cheramie observed the same truck at the scene of the accident.
Dr. William George, an expert in pharmacology and toxicology, testified that the defendant's blood-alcohol concentration was higher than .24 grams percent at the time of the accident. Dr. George explained that the alcohol level peaks at about forty-two minutes to one hour following the last drink. The level then begins to dissipate at a rate between 15 and 20 milligrams percent per hour. Thus, Dr. George indicated that during the approximate two hours between the defendant's accident and the drawing of his blood, his alcohol level would have been decreasing. Dr. George indicated that the effects of a.2 grams percent dose of alcohol include changes in confidence, personality, mood, and reaction time. He further indicated that such alcohol consumption causes confusion and visual disturbances like blurred and double vision. The likelihood of being in a fatal automobile accident would be forty to fifty times that of a non-drinking driver.
On cross-examination, Dr. George conceded that it was possible that the defendant's blood-alcohol concentration was lower than the .24 grams percent at the time of the accident, but it was not probable. On re-direct, Dr. George reiterated that in his opinion and based on his review of the case, the defendant's blood-alcohol concentration was greater than .24 grams percent at the time of the accident.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La.App. 1 Cir.1984). Accordingly, our role is not to assess credibility or reweigh evidence. State v. Smith, 94-3116, p. 2 (La.10/16/95), 661 So.2d 442, 443. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Higgins, XXXX-XXXX, p. 6 (La.4/1/05), 898 So.2d 1219, 1226, cert. denied, ___ U.S. *175 ___, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Azema, 633 So.2d 723, 727 (La. App. 1 Cir.1993), writ denied, 94-0141 (La.4/29/94), 637 So.2d 460; State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir. 1985). When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1 Cir.), writ denied, 514 So.2d 126 (La.1987).
We find that there was sufficient evidence of a causal relationship between defendant's blood-alcohol concentration and the victim's death to support the conviction. The evidence showed that the defendant was highly intoxicated at the time of the accident. Dr. George testified that the defendant's blood-alcohol concentration would have impaired defendant's judgment and vision and slowed his reaction ability. It was reasonable for the jury to infer that defendant's blood-alcohol concentration contributed to his lack of judgment. The jury could have reasonably disregarded the hypothesis that, even sober, the defendant could not have avoided the accident. Thus, the defendant's intoxication combined with his operation of his automobile was the cause of the victim's death. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second and final assignment of error, the defendant avers that La. R.S. 15:529.1 is unconstitutionally vague. The defendant cites Chief Justice Calogero's concurrence (although referred to by the defendant as a dissent) in State v. Everett, 2000-2998 (La.5/14/02), 816 So.2d 1272. The defendant contends that the Louisiana Supreme Court attested to the ambiguity of the statute. The defendant notes his objection below to the inclusion of a simple burglary conviction on the basis of La. R.S. 15:529.1 C, claiming that section C is ambiguous. The defendant concludes that the ambiguity of the statute renders it void for vagueness and mandates that it be held unconstitutional. The defendant requests that his original 20 sentence be reinstated.
Statutes are presumed to be valid; whenever possible, the constitutionality of a statute should be upheld. Because a statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. Attacks on the constitutionality of a statute may be made by two methods. The statute itself can be challenged, or the State's application to a particular defendant can be the basis of the attack. State v. Gamberella, 633 So.2d 595, 601-602 (La. App. 1 Cir.1993), writ denied, 94-0200 (La.6/24/94), 640 So.2d 1341. Constitutional challenges may be based upon vagueness. State v. Griffin, 495 So.2d 1306, 1308 (La.1986).
A statute is vague if its meaning is not clear to the average citizen or if an ordinary person of reasonable intelligence is incapable of discerning its meaning and conforming his conduct to it. State *176 v. Barthelemy, 545 So.2d 531, 532-533 (La. 1989); Gamberella, 633 So.2d at 602. Further, a statute must provide adequate standards by which guilt or innocence may be determined so that an individual's fate is not left to the unfettered discretion of law enforcement. Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858-1859, 75 L.Ed.2d 903 (1983).
The particular portion of La. R.S. 15:529.1 referenced by the defendant herein as unconstitutionally vague is section C. At the time of the Louisiana Supreme Court's decision in Everett, La. R.S. 15:529.1 C provided, in pertinent part, as follows:
This Section [the Habitual Offender Law] shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted.
The Everett court held that the defendant therein could be adjudicated a third offender notwithstanding the fact that previously he could not have been adjudicated a second offender (because the so-called "cleansing period" of La. R.S. 15:529.1 C in effect at the time of the commission of the defendant's second felony had elapsed at the time of that second felony).
The current version of La. R.S. 15:529.1 C provides (on this date and at the time of the offense) as follows:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.
The statutory revision makes it clear that each step of the defendant's multiple offender ladder must be examined to determine whether the State may link his first conviction to his second, his second conviction to his third, and his third conviction to his fourth to charge the defendant as a fourth felony offender. Considering the drastic revision of La. R.S. 15:529.1 C since the Louisiana Supreme Court's decision in Everett, the court's interpretation is inapplicable herein. We find that the legislature has cured any ambiguity that may have been in existence at the time of the Everett decision.
On appeal, the defendant particularly notes his objection below to the inclusion of a 1979 simple burglary predicate conviction in his habitual offender adjudication. We will examine the inclusion of this predicate for compliance with La. R.S. 15:529.1 C.
Any period of servitude by a person in a penal institution shall not be included in the computation of the ten-year period. La. R.S. 15:529.1 C. The State has the burden of proving that ten years has not elapsed between the defendant's release from custody on the prior offense and the new offense. State v. Smith, *177 XXXX-XXXX, p. 4 (La.App. 1 Cir. 12/17/04), 897 So.2d 710, 713; State v. Williams, XXXX-XXXX, p. 4 (La.App. 4 Cir. 11/20/02), 833 So.2d 428, 432, writ denied, XXXX-XXXX (La.10/3/03), 855 So.2d 307. The Louisiana Supreme Court has stated that the expiration of a previous sentence is determined by the date of the actual discharge from supervision by the Department of Corrections. State ex rel. Wilson v. Maggio, 422 So.2d 1121, 1123 (La.1982). See also Smith, XXXX-XXXX at p. 4, 897 So.2d at 713. "Discharge from supervision can take place earlier than the theoretical date on which the initial sentence would have terminated, because of a pardon, commutation, or good time credit. Or it can take place later because of parole revocation." Maggio, 422 So.2d at 1123.
In adjudicating the defendant a fourth felony habitual offender, the trial court, in pertinent part, relied on its interpretation of the Louisiana Supreme Court's decision in Everett. However, because section C of the statute has been drastically amended since the Everett decision, we need not determine whether the trial court's interpretation of the case is correct. Nonetheless, we find herein the State failed to prove that the ten-year "cleansing period" between the 1979 conviction and the 1995 predicate offense had not lapsed, such that the defendant's habitual offender adjudication must be reversed and the sentence vacated.
The defendant committed the simple burglary offense on May 8, 1978 and was convicted pursuant to a January 8, 1979 guilty plea. The sentence received by the defendant for the simple burglary conviction was two years imprisonment at hard labor, suspended with five years active probation. The next offense used by the State to establish the defendant's habitual offender status is a Texas criminal mischief over $1500 offense committed on September 22, 1995. The date of conviction for that offense is October 4, 1996. Thus, the 1995 offense was committed well after the ten-year cleansing period elapsed. As the State did not produce any evidence otherwise, the trial court erred in adjudicating the defendant a fourth felony habitual offender. Therefore, the multiple offender adjudication is hereby reversed, and the sentence is vacated. Of course, the State would have the option of once again attempting to prove that the defendant is an habitual offender, as double jeopardy does not apply to habitual offender adjudications. State v. Richardson, 91-2339, p. 9 (La.App. 1 Cir. 5/20/94), 637 So.2d 709, 715. Therefore, the defendant's conviction of vehicular homicide is affirmed, his habitual offender adjudication is reversed, the habitual offender sentence is vacated, the original sentence for vehicular homicide is reinstated, and the case is remanded to the trial court for further proceedings. In the event the defendant is again prosecuted for and adjudicated an habitual offender, then the trial court should again vacate the original sentence and resentence the defendant on the habitual offender adjudication.
CONVICTION FOR VEHICLE HOMICIDE AFFIRMED; HABITUAL OFFENDER ADJUDICATION REVERSED; HABITUAL OFFENDER SENTENCE VACATED; ORIGINAL SENTENCE FOR VEHICLE HOMICIDE REINSTATED; REMANDED.
GUIDRY, J., concurs.
KUHN, J., concurs.
NOTES
[1] The identity of the victim will not be disclosed herein. See La. R.S. 46:1844 W.