McDonald, j.
| gDefendant, Clifton Adam Daigle, Jr., was charged by bill of information with possession of a Schedule I controlled dangerous substance (heroin), a violation of LSA-R.S. JO^GCC).[1] He pled not guilty and filed a motion to suppress physical evidence, which the trial court denied. Following a jury trial, defendant was found guilty as charged. The trial court denied defendant’s motions for new trial and post-verdict judgment of acquittal and sentenced him to imprisonment at hard labor for nine years.
The State filed a habitual offender bill of information seeking to have defendant adjudicated a habitual offender under LSA-R.S. 15:529.1(A)(3)(b).[2] Defendant filed a motion to quash the habitual offender bill of information. Following a hearing, the trial court found defendant to be a fifth-felony habitual offender and sentenced him to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence under LSA-R.S. 15:529.1(A)(4)(b). Defendant moved for reconsideration of the sentence, and the trial court denied that motion. He now appeals, alleging counseled assignments of error related to the sufficiency of the evidence presented at his trial, the trial court’s ruling on his motion to suppress, the sufficiency of the evidence presented at his habitual offender hearing, and to his sentence; he also alleges pro se assignments of error relating to an alleged Brady[3] violation and to the State’s closing *983 arguments. For the following reasons, we affirm defendant’s conviction, habitual offender adjudication, and habitual offender sentence, and remand with instructions.

FACTS

On May 27, 2013, Deputy Derrick Torre-gano of the St. Tammany Parish Sheriffs Office was patrolling near the area of Claiborne Hill in Covington, Louisiana. As Deputy IsTorregano drove southbound on La. Hwy. 190 over the Claiborne Hill overpass, he observed a white Ford F-150 truck in front of him swerve and cross the center line of the roadway. Deputy Torre-gano activated his emergency lights and effected a traffic stop of the vehicle for illegal lane use.
Deputy Torregano directed the driver of the vehicle, who he identified at trial as defendant, to exit his vehicle and walk toward the patrol unit. Upon making contact with defendant, Deputy Torregano requested his identification. As defendant reached into his pocket to retrieve his driver’s license, a syringe fell from his pocket to the ground. Deputy Torregano placed his foot on top of the syringe until backup units arrived. After backup officers arrived, Deputy Torregano performed a pat down search of defendant’s person, at which time he recovered a spoon from the same pocket from which the syringe had fallen. Upon inspecting the spoon, Deputy Torregano observed that it had a layer of white residue on its top and an apparent burn mark on its bottom. Deputy Torregano then placed defendant under arrest. Tests performed on the samples taken from the spoon later identified the white residue as containing heroin.

SUFFICIENCY OF THE EVIDENCE

In his second counseled assignment of error, addressed first, defendant argues that the evidence presented at trial was insufficient to support his conviction for possession of heroin. Defendant contends the State failed to prove that he knowingly and intentionally possessed heroin and the State’s evidence identifying the residue as heroin was unreliable.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const, amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of Ureview incorporated in LSA-C.Cr.P. art. 821(B) is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfin-der must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
To convict a defendant for possession of heroin under LSA-R.S. 40:966(C), the State must prove beyond a reasonable doubt that defendant was in possession of the heroin and that he knowingly or intentionally possessed the heroin. In the instant case, defendant does not dispute that he possessed the substance which eventually tested positive as containing heroin. Rather, he argues that the State failed to prove that he possessed the spoon containing this substance for anything other than an innocuous purpose, thus making his *984 possession unknowing and unintentional, and that the testing procedures used to identify the heroin were unreliable.
In the instant case, the evidence regarding defendant’s knowing and intentional possession of the heroin is largely circumstantial. Deputy Torregano ultimately recovered the spoon from the same pocket from which the syringe had previously fallen. At trial, the jury heard St. Tammany Parish Sheriffs Office Deputy Jason Felts, who assisted Deputy Torregano at the time of the defendant’s arrest, testify about how a spoon and syringe can be used in conjunction with a heat source and cotton ball to inject heroin intravenously. The spoon was displayed as evidence to the jury and described by Deputy Torre-gano as having white residue on its top and a burn mark on its bottom. Both he and Deputy Felts identified these markings as being characteristic of drug use, rather than typical of a spoon for everyday use.
Jessica Watkins, a forensic scientist with the St. Tammany Parish Sheriffs Office Crime Lab, testified unequivocally at trial that the white residue on the spoon contained heroin. On cross examination, Ms. Watkins stated that the gas chromato-graph spectrometer used to conduct the chemical testing on the residue is used “almost daily, almost 24/7.” She explained that precautions are taken to clean the machine as often as necessary, which is at least twice a year, but occasionally more often if maintenance needs to be done.
| .^Defendant did not testify at trial. Through closing argument, defense counsel advocated the theory that defendant mistakenly possessed a spoon that happened to contain trace amounts of heroin. Defense counsel cited the State’s failure to prove that defendant was impaired at the time the traffic stop occurred, as well as the fact that Deputy Torregano did not recover any heat source, such as a lighter or matches, that would be used to cook heroin.
After a thorough review of the record, we are convinced that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could find the evidence proved beyond a reasonable doubt, and to the exclusion of the hypothesis of innocence raised by defendant, all of the elements of possession of heroin. Through Ms. Watkins’ uncontroverted testimony, the State proved that the white residue on the spoon in defendant’s possession contained heroin. Although defendant argues that the testing apparatus was unreliable due to what he considers to be an inadequate cleaning schedule, this evidence was considered by the jury and is more properly considered a matter of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. In addition, the jury was presented with evidence that defendant not only possessed the spoon, which to the naked eye contained white residue and burn marks, but also a syringe. The jury heard how these two objects can be used together to inject heroin. Although defense counsel contended that defendant did not knowingly and intentionally possess a spoon with heroin on it, the jury clearly rejected that hypothesis of innocence. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1 Cir.), writ *985 denied. 514 So.2d 126 (La.1987). No such hypothesis exists in the instant case.
In reviewing the evidence, we cannot say that the jury’s determination was irrational under the facts and circumstances presented. See Ordodi, 946 So.2d at 662. IfiAn appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a conviction on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the factfinder. See State v. Calloway, 07-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). This assignment of error is "without merit.

MOTION TO SUPPRESS

In his first counseled assignment of error, defendant argues the trial court erred in denying his motion to suppress. Specifically, he contends that at the time of the pat down search, he was not under arrest, and Deputy Torregano had no justification for conducting a search of his person.
A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. LSA-C.Cr. P. art. 703(A). The State bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. See LSA-C.Cr.P. art. 703(D). A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, 01-0908 (La.App. 1 Cir. 11/8/02), 835 So.2d 703, 706, writ denied, 02-2989 (La.4/21/03), 841 So.2d 791. On a motion to suppress, reviewing courts should defer to the credibility findings of the trial court unless its findings are not adequately supported by reliable evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 281. On the other hand, a trial court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746, 751.
Deputy Torregano was the only witness to testify at the suppression hearing. He testified that he found the spoon as the result of a pat down search of defendant’s person. Deputy Torregano explained that he performed the pat down search after the syringe fell from the defendant’s pocket and once backup officers arrived on the scene. In denying defendant’s motion to suppress, the trial court found that Deputy Torregano’s discovery of the spoon was pursuant to a valid search incident to arrest for what would have been a drug paraphernalia charge as a result of the syringe.
17At trial,[4] Deputy Torregano testified further about the details of the traffic stop and his subsequent discovery of the spoon. On cross examination, Deputy Torregano stated that the syringe alone did not give him cause to arrest defendant, because he was aware of medical reasons for people to carry syringes. Thus, he admitted that defendant was not under arrest upon his discovery of the syringe. Deputy Torregano further admitted that he did not conduct the pat down search incident to defendant’s arrest, because he was not arrested at the time of the pat down. Rather, Deputy Torregano explained that he asked for, *986 and received, defendant’s consent to search his person. According to Deputy Torregano, that consent search ultimately led to the discovery of the spoon.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well delineated exceptions. State v. Thompson, 11-0915 (La.5/8/12), 93 So.3d 553, 574. We need not address whether the search of defendant was a valid search incident to arrest or a Terry[5] protective search, because Deputy Torre-gano’s unequivocal testimony at trial was that he obtained defendaht’s consent to conduct the search. A consent search is a recognized exception to the warrant requirement. Id. Therefore, when Deputy Torregano discovered the spoon, he did so pursuant to a recognized exception to the warrant requirement. This assignment of error is without merit.

HABITUAL OFFENDER ADJUDICATION

In his third counseled assignment of error, defendant alleges the evidence presented at his habitual offender hearing was insufficient to support the trial court’s finding that he was a fifth-felony habitual offender. Specifically, he contends the State failed to carry its burden with respect to establishing two of the alleged predicate convictions and also that the State failed to- negate the cleansing period with respect to the same two alleged predicate convictions.
| ^Louisiana Revised Statute 15:529.1 provides a system of enhanced punishment for repeat offenders. To prove a defendant a habitual offender, the State must prove, among other things, that the defendant was convicted of a prior felony. Prima facie proof of a prior felony conviction may be established by compliance with LSA-R.S. 15:529.1(F). However, compliance with LSA-R.S. 15:529.1(F) is not the exclusive method of proving a prior felony conviction; any other competent evidence may be used to establish such proof. See Moten, 510 So.2d at 63.
To obtain a multiple offender conviction, the State is also required to establish both the prior felony convictions and that the defendant is the same person convicted of those felonies. In attempting to do so, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver’s license number, sex, race, and date of birth. See State v. White, 13-1525 (La.11/8/13), 130 So.3d 298, 300-01; State v. Payton, 00-2899 (La.3/15/02), 810 So.2d 1127, 1130. The Habitual Offender Act does not require the State to use a specific type of evidence, including fingerprints, to carry its burden at a habitual offender hearing, and prior convictions may be proved by any competent evidence. See White, 130 So.3d at 300; Payton, 810 So.2d at 1132.
In addition to the above, evidence of the date of discharge from a prior felony is an essential element in a multiple offender case. Louisiana Revised Statute 15:529.1(C) provides that the current offense shall not be counted as, respectively, a second, third, fourth, or higher offense, if more than ten years have elapsed between the date of the commission of the current offense(s) and the expiration of the maximum sentence(s) of the previous conviction(s) alleged in the multiple offender bill and the date of the commission of the *987 following offense(s). The burden of proof is on the State to demonstrate that this ten-year “cleansing period” has not run unless fewer than ten years have elapsed between a defendant’s conviction of the predicate felony and his commission of the latest felony. See State v. Smith, 04-0800 (La.App. 1 Cir. 12/17/04), 897 So.2d 710, 713. Any period of parole, probation, or incarceration by a person in a penal institution shall not be included in the computation of the ten-year 19period. See LSA-R.S. 15:529.1(C). The expiration of a previous sentence is determined by the date of the actual discharge from supervision by the Department of Corrections. See State ex rel. Wilson v. Maggio, 422 So.2d 1121, 1123 (La.1982). Discharge can take place earlier than the theoretical date on which the sentence would have terminated, because of a pardon or commutation. Or, it can take place later because of a parole revocation. Id.
At defendant’s habitual offender hearing in this case, the State sought to prove that defendant had four prior convictions: (1) a November 19, 2004 conviction for simple robbery under Twenty Second Judicial District Court (22nd JDC)/St. Tammany Parish docket number 380,315; (2) an April 16, 2004 conviction for possession of oxycodone (a Schedule II controlled dangerous substance) under 22nd JDC/St. Tammany Parish docket number 377,018; (3) a December 13, 1991 conviction for aggravated battery in 24th JDC/Jefferson Parish docket number 91-4622; and (4) a November 13, 1984 conviction, for simple robbery in 24th JDC/Jefferson Parish docket number 84-2179. In proving those four prior convictions, the State only actually sought to have defendant adjudicated a third-felony habitual offender under LSA-R.S. 15:529,1(A)(3)(b). To do so, the State introduced the testimony of Detective Tommy Morse, an expert fingerprint examiner from the St. Tammany Parish Sheriffs Office Crime Lab.
Detective Morse took defendant’s fingerprints on the morning of the habitual offender hearing and compared them to those taken at the time of defendant’s convictions in docket numbers 380,315 and 377,018. He found them to be the same. The State also introduced certified copies of defendant’s convictions in docket numbers 91-4622 and 84-2179. Each of these certified convictions identified defendant by name and listed his date of birth as March 14,1967, which matched with defendant’s known date of birth. The trial court found this evidence was sufficient to prove each of defendant’s predicate convictions beyond a reasonable doubt.
Based on the above, we conclude that the evidence presented at the habitual offender hearing was sufficient to prove that defendant was the same person convicted of these four prior felonies. However, our evaluation does not end with that conclusion. |inWe must now determine whether the State carried its burden of proving that the ten-year cleansing period had not elapsed with respect to each of the prior convictions.
Defendant’s instant offense occurred on May 27, 2013. Clearly, then, the convictions under docket numbers 380,315 and 377,018 fall within ten years of the commission date of the instant offense. Therefore, the State was not required to prove their discharge dates. However, defendant’s convictions in docket numbers 91-4622 and 84-2179 require further analysis.
The sentencing form attached to the conviction in 24th JDC/Jefferson Parish docket number 91-4622 (aggravated battery) indicates that, on December 13, 1991, defendant was sentenced to three years imprisonment for that offense. A certified “pen pack” submitted into evidence indi *988 cates that defendant was released from custody for this offense on September 6, 1994. Considering this date of release and the date of commission of the valid predicate offense numbered 377,018 (i.e., January 10, 2004), the State proved that the conviction under 91-4622 had not been cleansed. See LSA-R.S. 16:629.1(0). Thus, the State sufficiently proved the existence and timeliness of this predicate offense.
We turn next to the November 13, 1984 conviction (simple robbery) under 24th JDC/Jefferson Parish docket number 84-2179. Because this predicate conviction was secured fewer than ten years prior to the commission date of the predicate offense in docket number 91-4622 (i.e., September 7, 1991), the State sufficiently proved the existence and timeliness of this predicate offense. See LSA.-R.S. 15:529.1(C).
In his brief, defendant asks this court to follow its result in State v. Thomas, 05-2210 (La.App. 1 Cir. 6/9/06), 938 So.2d 168, writ denied, 06-2403 (La.4/27/07), 955 So.2d 683. In Thomas, 938 So.2d at 176, we wrote that the statutory revision to LSA-R.S. 15:529.1(0 made it clear that each step of a defendant’s multiple offender ladder must be examined to determine whether the State may link his first conviction to his second, his second conviction to his third, and his third conviction to his fourth to charge the defendant as a fourth-felony offender. The ultimate result in Thomas is factually distinguishable from the current scenario, because, in Thomas, the State failed to provide any temporal linkage between a 1979 conviction and an | noffense committed in 1995. While the State provided information regarding Thomas’s sentence for the 1979 conviction, it did not produce evidence regarding the discharge date for that offense. Therefore, it could not overcome the ten-year cleansing period. See Id. at 177.
In the instant case, the State has successfully demonstrated a temporal linkage between all of defendant’s predicate offenses. The predicate conviction numbered 84-2179 occurred within ten years of the commission date of the predicate conviction numbered 91-4622; discharge from the predicate conviction numbered 91-4622 occurred within ten years of the commission dates of the two remaining predicate convictions, which were themselves committed within ten years of the instant offense. Therefore, while we subscribe to Thomas’s statement that requires the linkage of predicate offenses, the ultimate result from that case is inapplicable here.
Upon careful review of the record, we have determined that the State sufficiently proved defendant’s identity as the individual who committed all of the alleged predicate offenses. Further, the State proved that the cleansing period had not elapsed with respect to any of defendant’s predicate convictions. This assignment of error is without merit.

EXCESSIVE SENTENCE

In his final counseled assignment of error, defendant argues that his mandatory life sentence, without benefit of parole, probation, or suspension of sentence, is unconstitutionally cruel and excessive in light of his underlying conviction for possession of only a minute amount of heroin.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is constitutionally excessive if it is grossly disproportionate to the severity of *989 the offense or is nothing more than a purposeless and needless infliction of pain and suffering. See State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La.10/5/01), 798 So.2d 962. A sentence is grossly disproportionate if, when the | ¶..crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. See State v. Hogan, 480 So.2d 288, 291 (La.1985). A trial court is given wide discretion in the imposition of a sentence within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Lobato, 603 So.2d 739, 751 (La.1992).
In the instant case, defendant was adjudicated a fifth-felony habitual offender. However, the State’s habitual offender bill of information sought only to have defendant sentenced in conformity with LSA-R.S. 15:529.1(A)(3)(b), one of the provisions relative to a third-felony habitual offender. Though the trial court ultimately sentenced defendant under LSA-R.S. 15:529.1(A)(4)(b), that provision is structurally similar to LSA-R.S. 15:529.1(A)(3)(b), and these provisions require the same mandatory sentence. As next discussed, although this discrepancy does not affect defendant’s sentence, we will remand this case for amendment of his commitment order to reflect that he is sentenced as a third-felony offender.
If a defendant’s third (or fourth or subsequent) felony and two of his prior felonies are crimes of violence under LSA-R.S. 14:2(B), violations of the Uniform Controlled Dangerous Substances Law (“UCDSL”) punishable by imprisonment for ten years or more, or a combination thereof, he shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 15:529.1(A)(3)(b) and (A)(4)(b). Here, defendant’s enhanced felony — possession of heroin — is a violation of the UCDSL punishable by imprisonment for not less than four years nor more than ten years. See LSA-R.S. 40:966(0(1). His predicate convictions for simple robbery and aggravated battery are crimes of violence. See LSA-R.S. 14:2(B)(5) and (23). Therefore, defendant’s habitual offender sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, was mandatory under LSA-R.S. 15:529.1(A)(3)(b) or (A)(4)(b).
Even though a sentence is the mandatory minimum sentence, it may still be excessive if it makes no measurable contribution to acceptable goals of punishment, amounts to nothing more than the purposeful imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). In order for a defendant to rebut the presumption that a mandatory minimum sentence is constitutional, he must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circum stances of the case. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676, citing State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531 (Plotkin, J., concurring), writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
Departures downward from the minimum sentence should only occur in rare situations. See Id. at 677. In his brief, the only mitigating circumstance defendant cites is the small amount of heroin collected from the spoon in his possession. However, at the time of sentencing, he did *990 not put forth any particular supporting arguments to the trial court.
We have reviewed the record and find it supports the sentence imposed. Based on our review, we cannot say that the trial court erred or abused its discretion in imposing the mandatory habitual offender sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. At the time of his sentencing, defendant did not make any specific arguments to the trial court. Therefore, he did not clearly and convincingly demonstrate to the trial court that he is “exceptional.” See Id. at 676. He failed to cite any unusual or exceptional circumstances to show that he is a victim of the legislature’s failure to assign a sentence meaningfully tailored to his culpability, to the circumstances of his case, and to his status as a habitual offender. Therefore, there was no reason for the trial court to deviate from the mandatory minimum sentence. This assignment of error is without merit.

BRADY VIOLATION

In his first pro se assignment of error, defendant contends the State committed a Brady violation by failing to disclose to the jury that the syringe found by Deputy Torregano actually tested positive for cocaine, not heroin. He contends that this |14evidence is exculpatory, because it negates the inference that he knowingly and intentionally possessed heroin on the spoon.
In Brady v. Maryland, 873 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused, after receiving a request for the evidence, violates a defendant’s due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. State v. Bright, 02-2793, 03-2796 (La.5/25/04), 875 So.2d 37, 41. However, contrary to defendant’s apparent belief, Brady does not apply to a situation where the prosecution has disclosed favorable evidence to the defendant but simply elects not to present that evidence at trial. Rather, the Brady rule governs pretrial discovery procedures. See State v. Winzer, 49,316 (La.App. 2 Cir. 10/8/14), 151 So.3d 135, 146.
Defendant does not argue that the State failed to disclose to him the existence of the laboratory report indicating that the syringe contained cocaine. In fact, this laboratory report was attached to the State’s notice of intention to use the certificate of analysis, which was served on defendant. Rather, defendant argues that the State simply failed to present the cocaine evidence at trial. Most likely, the State elected not to present this evidence, because defendant was not charged with possession of cocaine, and it did not want to run afoul of the other crimes evidence provisions of LSA-C.E. art. 404(B). Defendant’s allegations in this pro se assignment of error do not set forth a Brady violation. This assignment of error is without merit.

IMPROPER CLOSING ARGUMENT

In his second pro se assignment of error, defendant alleges the State presented a misleading, prejudicial, and inflammatory closing argument. Defendant’s main contention appears to be that the prosecutor’s reference to him as a “heroin addict” was unsupported by any evidence presented at trial. Defendant cites the following excerpted statement in his argument regarding the prosecutor’s rebuttal argument;
Now, with respect to us, all of us right here, we may not know it’s heroin. But a heroin addict knows what this is, and *991 he knows to take it[,] he needs this. (Indicating [to the spoon or the syringe].)
| iSLater in the sanie argument, the prosecutor twice more presented the same general assertion that defendant, as a heroin addict, would know what was on the spoon.
Following the prosecutor’s rebuttal argument, defense counsel moved for a mistrial on the basis that defendant had been referred to as a heroin addict “at least three different times.” In response, the prosecutor argued that his charactérization of defendant as a heroin addict was explicitly calculated to rebut defense counsel’s contention that defendant had no idea what was on the spoon. He also argued that this characterization was a logical extension of the facts proven at trial. The trial court denied the motion for mistrial but gave no reasons.
• Arguments by counsel shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and .to the law applicable to the case. The State’s rebuttal shall be confined to answering the argument of the defendant. See LSA-C.Cr.P. art. 774. Here, the State’s rebuttal argument was directed to answering defendant’s argument. Defense counsel argued that defendant had no knowledge regarding the type of residue present on the spoon. The State essentially argued in rebuttal that, while an ordinary person might be ignorant of the composition of the residue, a heroin addict, such as defendant, would be well aware of the substance. Fairly read, this rebuttal was confined to answering defendant’s argument. In denying the motion for mistrial, the trial court also obviously concluded that the State’s rebuttal was, as the State argued, a logical extension of the facts proven at trial. Based on the totality of the evidence, we conclude that the trial court did not err or abuse its discretion in denying the mistrial. The evidence presented at trial — defendant’s possession of a syringe and a spoon containing residue and burn marks — supported a logical argument that defendant was an addict of some sort.
Further, even if we were to assume that the prosecutor’s reference to defendant as a “heroin addict” was improper, we find that any error was harmless beyond a reasonable doubt. Before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Legrand, 02-1462 (La.12/3/03), 864 So.2d 89, 101, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005). In the hfiinstant case, the State presented uncon-troverted evidence that the substance present on the spoon was heroin. The State also presented strong circumstantial evidence regarding defendant’s knowledge of the presence of that substance, including the burn mark located on the bottom of the spoon and defendant’s possession of the syringe.[6] In addition, the trial court also instructed the jury that opening statements and closing arguments are not to be considered as evidence. Considering the above evidence and instructions to the jurors, we conclude that any allegedly improper remarks by the prosecutor did not influence the jury or contribute to the guilty verdict. This assignment of error is without merit.
CONCLUSION
As previously noted, when the defendant was sentenced at the conclusion of the *992 habitual offender hearing, the trial court relied upon LSA-R.S. 16:529.1(A)(4), which applies to a “fourth or subsequent felony” habitual offender; however the State sought to have defendant adjudicated under LSA-R.S. 15:529.1(A)(3)(b), which applies to a third-felony habitual offender. We now order that defendant’s commitment order be amended to reflect that he is sentenced as a third-felony offender. We remand this case to the trial court for correction of the commitment order and transmission of amended commitment order to the Department of Corrections.
For the foregoing reasons, we affirm defendant’s conviction, habitual offender adjudication, and sentence.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.

. Initially, defendant was also charged with possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1, but the State later nol-prossed that count.

. Louisiana Revised Statute 15:529.1(A)(3)(b) provides a mandatory enhanced sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, for offenders whose instant and predicate offenses fall into certain categories. The State alleged the following predicate offenses in the habitual offender bill of information: 1) a November 19, 2004 conviction for simple robbery in 22nd JDC/St. Tammany Parish docket number 380,315; 2) an April 16, 2004 conviction for possession of oxyco-done (a Schedule II controlled dangerous substance) in 22nd JDC/St. Tammany Parish docket number 377,018; 3) a December 13, 1991 conviction for aggravated battery in 24th JDC/Jefferson Parish docket number 91-4622; and 4) a November 13, 1984 conviction for simple robbery in 24th JDC/Jefferson Parish docket number 84-2179.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. In determining whether the ruling on the motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may also consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979); State v. Dunham, 12-0826 (La.App. 1 Cir. 12/21/12), 111 So.3d 1095, 1097-98.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. We recognize that the syringe ultimately tested positive only for cocaine but that evidence was not presented to the jury.